IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PIERRE JAMES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 11−cv−1083−MJR−SCW |
| | ) |
| SGT. CARTWRIGHT, and four JOHN DOES | ) |
| | ) |
| Defendants. | ) |

# REPORT & RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

This § 1983 case, in which *pro se* Plaintiff Pierre James has alleged excessive force, is before the Court on the Defendants' Motion for Summary Judgment (Doc. 30). The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on whether James exhausted his administrative remedies before filing suit. For the following reasons, it is **RECOMMENDED** that the Defendants' motion (Doc. 30) be **DENIED**.

### FACTUAL AND PROCEDURAL BACKGROUND

On December 12, 2011, Pierre James, an inmate at Stateville Correctional Center in Illinois, brought the instant suit pursuant to 42 U.S.C. § 1983. Plaintiff's sole remaining allegation after threshold review stated a claim against the Tactical Team at Stateville for beating him during an August 10, 2010 cell extraction. (Doc. 9). Plaintiff was able to identify one member of the tactical

1

team, Sgt. Cartwright, and Defendant has been ordered to produce the names of the other tactical team members. (Doc. 40).

In the meantime, Defendant filed the instant motion on January 22, 2013. (Doc. 30). Defendant argued that Plaintiff never adequately described the August 10, 2010 incident in any grievance, and alternatively, that Plaintiff did not complete the grievance process. Plaintiff filed a Response in Opposition to Defendant's Motion admitting that he never completed the grievance process, but arguing that the grievance process was unavailable to him because he never received any responses to his grievances, thus making any appeal impossible. (Doc. 32). The Court held a hearing in which Jeannette Cowan, former grievance officer at Stateville, and Plaintiff offered their testimony. Having thoroughly reviewed the entire record, the undersigned **RECOMMENDS** as follows.

### JAMES' GRIEVANCES

In support of his Complaint, Plaintiff submitted a grievance dated September 4, 2010, which challenged both staff conduct and the disciplinary report that was generated against Plaintiff as a result of the incident. (Doc. 1, p. 32). Although most of the grievance addresses the disciplinary hearing, the grievance also cites to the 8th Amendment and alleges that the grievant was pepper-sprayed and beaten while handcuffed by the Tactical Unit. (Doc. 1, p. 32). The grievance also alleges that Plaintiff filed two other grievances that had been ignored. (Doc. 1, p. 32). The grievance does not contain a response from Plaintiff's counselor, the grievance officer, or the CAO. Plaintiff also submitted a grievance dated September 7, 2010 where he contested his cell placement after the August 10, 2010 incident. (Doc. 1, p. 34). This grievance also lacked an institutional response. (Doc. 1, p. 34). Plaintiff testified that he wrote these grievances himself, and they bear his signature at the bottom. (Doc. 1, p. 32-35).

In his Response to Defendant's Motion for Summary Judgment, Plaintiff clarified that the September 4, 2010 grievance and the September 7, 2010 grievances were actually faxed to the ARB and the CAO by Plaintiff's mother, Ms. James. (Doc. 32, p. 3, p. 20). Plaintiff testified at the hearing that he felt forced to take this step because he had attempted to grieve the August 10, 2010 previously and received no response. No record of these earlier grievances has been found. Ms. Cowan testified that she never received any grievances. Plaintiff testified that he put them in the slot of his suicide cell within three to four days after the incident, and assumed that they had been picked up by the staff. Ultimately, the faxed grievances were returned to Ms. James on September 15, 2010 by the CAO with the explanation that she could not file grievances on Plaintiff's behalf. (Doc. 32, p. 26). Still, it was undisputed that the COA and Ms. Cowan were aware of the faxed grievances. The correspondence also indicated Plaintiff would be given a housing change, which is part of the relief he requested in the September 7, 2010 grievance. (Doc. 32, p. 26). Plaintiff testified he believed this statement indicated that his earlier lost grievances had actually been received. He also testified that he received the housing re-assignment.

Finally, Plaintiff submitted a third grievance dated November 19, 2010 along with his Complaint, which mentioned that Plaintiff could no longer grieve the discipline as a result of the August 8, 2010 incident and requested relief related to the segregation time he was awarded as a result. (Doc. 1, p. 36). The document submitted by Plaintiff contained no response, however, at the May 20, 2013 hearing, Defendants submitted a copy of the same grievance with the grievance officer's response (Exhibit C). Plaintiff testified the hearing was the first occasion that he had seen any response from the November 19th grievance. The grievance had been considered on the merits, but addressed the adjustment committee's decision, rather than the cell extraction itself. Plaintiff also generally testified the Menard has a history of losing his grievances.

**LEGAL STANDARDS**

1. *Summary Judgment Standard*

Summary judgment—which is governed by FEDERAL RULE OF PROCEDURE 56— is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. **Dynegy Mktg. & Trade v. Multiut Corp., 648 F.3d 506, 517 (7th Cir. 2011) (citing FED. R. CIV. P. 56(a))**.[1] The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits and/or information obtained via discovery—the lack of any genuine issue of material fact. **Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)**.

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." **Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). See also Serednyj v. Beverly Healthcare, LLC, 656 F.3d 540, 547 (7th Cir. 2011) ("When a summary judgment motion is submitted and supported by evidence . . . the nonmoving party may not rest on mere allegations or denials in its pleadings.")**. A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. **Anderson, 477 U.S. at 248.** A mere scintilla of evidence supporting the non-movant's position is insufficient; a party will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion. **Albiero v. City of Kankakee, 246 F.3d 927, 931–32 (7th Cir. 2001). See also Steen v. Myers, 486 F.3d 1017, 1022 (7th Cir. 2007) ("[S]ummary judgment is . . . the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.") (internal quotation marks omitted).** In other words, there is "no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." **Van Antwerp v. City of Peoria, 627 F.3d 295, 297 (7th Cir. 2010). Accord**

---

[1] Though Rule 56 was amended in 2010, the amendment did not change the summary judgment standard. **Sow v. Fortville Police Dept., 636 F.3d 293, 300 (7th Cir. 2011)**.

***Anderson*, 477 U.S. at 248 (material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party).**

Finally, the Court's role on summary judgment is not to evaluate the weight of the evidence, to judge witness credibility, or to determine the truth of the matter, but rather to determine whether a genuine issue of triable fact exists. ***Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).** The Court considers the facts in a light most favorable to the non-movant. ***Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009).**

### 2. PLRA's Exhaustion Requirement

Lawsuits filed by prisoners are governed by 42 U.S.C. § 1997e, the Prison Litigation Reform Act ("PLRA"). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. **42 U.S.C. § 1997e(a).** Failure to satisfy the PLRA's exhaustion requirement is an affirmative defense. ***Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008).**

Where the defense has been raised, the Seventh Circuit has set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all the necessary findings of fact without being bound by (or even informed of) any of the

findings made by the district court in determining that the prisoner had exhausted his administrative remedies.

**Id. at 742.**

Though the Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement, **Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006)**, the PLRA's plain language is clear that an inmate must exhaust only those administrative remedies that are available to him, **42 U.S.C. § 1997e(a)**. Administrative remedies become "unavailable" when prison officials fail to respond to a properly-filed inmate grievance, **Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002)**, or when prison employees otherwise use affirmative misconduct to prevent a prisoner from exhausting, **Dole, 438 F.3d at 809. See also Ducey v. Flagg, No. 08-cv-0691-MJR, 2009 WL 3065045, at *4 (S.D. Ill. Sept. 21, 2009) ("[P]rison officials can easily thwart an inmate's attempt to exhaust administrative remedies simply by failing to respond to his or her grievances.").** Defendants bear the burden of proving the exhaustion requirement, which is an affirmative defense. **Pavey v. Conley (Pavey II), 663 F.3d 899, 903 (7th Cir. 2011).**

The contours of the exhaustion requirement are set by each state's prison grievance system, so the Court looks to Illinois law for the procedures relevant to the instant motion. **See Jones v. Bock, 549 U.S. 199, 218 (2007).**

3. **Exhaustion Requirement under Illinois Law**

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Corrections' Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Admin. Code § 504.800 et seq.** The grievance procedures first require inmates to speak with their Counselor about their complaint. **20 Ill. Admin. Code § 504.810(a)**. If the Counselor does not resolve the issue, the inmate must file a grievance form (directed to the Grievance Officer) within 60 days of the incident. **Id**. If the 60-day deadline has passed, the inmate is still invited to grieve: "[I]f

6

an offender can demonstrate that a grievance was not timely filed for good cause, the grievance shall be considered." **20 Ill. Admin. Code § 504.810(a).**

"The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer," who "shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code § 504.830(d).** "If after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision." **20 Ill. Admin. Code § 504.850(a)**. "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code § 504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code § 504.850(f)**.

Alternatively, a prisoner "may request a grievance by handled on an emergency basis by forwarding the grievance directly to the Chief Administrative Officer." **20 Ill. Adm. Code § 504.840**. The CAO must make a determination whether the grievance shall be handled on an emergency basis. **20 Ill. Adm. Code § 504.840**. If so, the CAO "shall expedite processing of the grievance and respond to the offender, indicating what action shall be or has been taken." **20 Ill. Adm. Code § 504.840.**

## CONCLUSIONS OF LAW

The Motion for Summary Judgment raises the issue of whether the grievance process was available to Plaintiff after the August 8, 2010 incident. The Court found both witnesses credible

7

at the hearing but recommends that the Motion for Summary Judgment be denied because Plaintiff has submitted evidence to suggest that the grievance process was unavailable to him.

As an initial matter, the undersigned rejects Defendants' arguments that Plaintiff never grieved the August 10, 2010 cell extraction incident in any form. The September 4, 2010 grievance clearly states that the grievance is based in part on the 8th Amendment, which bars cruel and unusual punishment, and describes the cell extraction incident.

The undersigned also finds Plaintiff's testimony that he submitted a grievance from segregation within three to four days after the incident credible. Plaintiff testified that he had previously sued staff on the segregation block and that they would have been responsible for sending his grievance to his counselor. He also testified that although his counseling summary indicates that he reported no issues to his grievance counselor one week after the incident, the summary is not always accurate because counselors may decide that safety concerns prohibit them from carrying out their rounds. While the undersigned also finds Ms. Cowan's testimony credible, there are many ways that Plaintiff's initial grievance could have gone astray before reaching her. Ms. Cowan's testimony that she never received a grievance does not speak to the issue of whether Plaintiff ever submitted one. Therefore, the undersigned finds that he did.

Plaintiff also testified that he took the unusual step of sending two fully completed grievance forms bearing his signature to his mother so she could fax them to the CAO. Plaintiff took this step within sixty days after the incident, or within his time to file a grievance. The parties agree that the CAO received these grievances. Ms. Cowan testified that they were returned to Ms. James because no one can file grievances on behalf of an inmate. The Defendants argue that this conclusion is implied by the Illinois Administrative Code. However, the Code contains no explicit command on this point. In fact, the Code states that staff should assist inmates in filing grievances if they are unable to do so themselves. When this was pointed out to Defendants, they argued that

8

as long as the assistance came from inside the prison, it was acceptable. No explicit provision of the Code that commands that result either. While the undersigned agrees with the Defendants that the Code does not contemplate third-parties *writing* grievances on behalf of other inmates, the undersigned rejects the conclusion that the inmate must *file* the grievances personally. There is testimony in the record that grievances may be submitted to any staff member, that that the staff will then tender the grievance to the appropriate office. Staff are also permitted by the Code to assist inmates with writing grievances. Finally, Defendant's position would imply that a grievance that passed through the hands of the United States Postal Service would also be rejected. Prisoners are permitted to file their emergency grievances directly with the CAO. Plaintiff testified that his mother's fax was an attempt to do just that. Though his method was unusual, the undersigned finds nothing in the Illinois Code that would explicitly prohibit it.

Additionally, the case law is very clear that the purpose of the administrative exhaustion requirement is to give prison officials an informal chance to resolve issues raised by inmates. **Woodford v. Ngo, 548 U.S. 81, 88-89 (7th Cir. 2006).** Here, it is clear that prison officials had that chance. The fax apprised the CAO of Plaintiff's issues. Additionally, Ms. Cowan also testified that she had reviewed the faxed grievances. Regardless of how the grievances got there, it did serve to apprise the administrative staff of the nature of Plaintiff's complaints. At the very least, the faxed grievances put the administrative staff on notice that Plaintiff believed that he had timely filed earlier grievances. If the staff had no record of those grievances, they should have investigated further, or at least alerted Plaintiff directly that they had no copies of those grievances so he could take action within his sixty days to file a grievance on point. Instead they informed Ms. James, not Plaintiff, that they would not consider the faxed grievances and did not address the earlier grievances. In fact, had the administrative staff returned the grievances to Plaintiff instead of his mother, he could have turned around and filed them himself, thus curing the defect. The

undersigned finds that the faxed grievances were a valid means of attempting to grieve the cell extraction within the sixty day period because they served to put the administrative staff on notice of the issues, which is the purpose of the exhaustion requirement.

## CONCLUSION

For the foregoing reasons, it is respectfully **RECOMMENDED** that Defendant's Motion for Summary Judgment (Doc. 30) be **DENIED**. If this Report is adopted, then all of Plaintiff's claims will remain in the case.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004). Objections to this Report and Recommendation must be filed on or before June 24, 2013. *See* FED. R. CIV. P. 6(d); SDIL-LR 5.1(c).

**IT IS SO RECOMMENDED.**
**DATE: June 5, 2013**     /s/ *Stephen C. Williams*
                           **STEPHEN C. WILLIAMS**
                           United States Magistrate Judge